ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| JUAN M. CRESPO MORALES<br><br>Recurrente<br><br>V.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrida | KLRA202400557 | *REVISIÓN ADMINISTRATIVA* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 147941<br><br>Sobre: CONSIDERACIÓN LIBERTAD BAJO PALABRA |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de noviembre de 2024.

Comparece ante nos, el señor Juan M. Crespo Morales (señor Crespo o recurrente), y nos solicita que revisemos la *Resolución* emitida por la Junta de Libertad Bajo Palabra (la Junta o recurrida) el 6 de julio de 2023. Mediante la misma, la Junta le denegó al recurrente el privilegio de libertad bajo palabra.

Por los fundamentos que expondremos a continuación, se revoca la *Resolución* recurrida.

**I.**

Surge del expediente que el señor Crespo fue sentenciado por el delito de asesinato en primer grado (4 casos), Conspiración, e infracción al Art. 6 de la Ley de Armas (2 casos), al Art. 6A de la Ley de Armas y al Art. 8 de la Ley de Armas (2 casos). La sentencia consolidada asciende a 594 años de cárcel.

Tras adquirir jurisdicción, el 20 de marzo de 2020, la Junta evaluó el caso del recurrente, a los fines de determinar si éste cualifica para beneficiarse del privilegio de libertad bajo palabra.

Consecuentemente, el 5 de abril de 2024, notificado el 16 del mismo mes y año, la parte recurrida radicó el *Informe Breve de Libertad Bajo Palabra.*[1] Luego de ello, el 18 de junio de 2024, la Junta emitió *Resolución* en la que formuló las siguientes determinaciones de hechos:[2]

1. De la investigación realizada por parte de personal del Programa de Comunidad Metropolitano-recibida en la Junta el 16 de abril de 2024, se determina que la vivienda sometida en el plan de salida para Villa Carolina, Carolina Puerto Rico, no es viable, no pudo ser corroborada, durante la investigación el DCR no tuvo acceso al interior de la vivienda.

2. Tomando en consideración el historial social del peticionario, así como el informe del Programa Aprendiendo a Vivir sin Violencia, la Junta solicita que se realice al peticionario una evaluación psicológica actualizada en la cual se indique factores que estén relacionado con su proceso rehabilitativo.

3. Se desprende del expediente social, que el confinado se encuentra en custodia mínima desde el 22 de junio de 2023, al presente.

4. El 29 de diciembre de 2023, se determinó por parte del personal de Physician Correctional, que el peticionario no cumple con los criterios para beneficiarse de tratamiento en el área de salud mental ni de sustancias controladas.

5. El peticionario completó el Programa de Aprendiendo a Vivir sin Violencia el 20 de julio de 2023.

---

[1] Véase, Anejo III, págs. 11-13.
[2] Véase, Anejo I, págs. 1-5.

6. El 25 de marzo de 2019, completó las Terapias de Control de Conducta Violenta.

7. El 26 de enero 2016, le fue realizada una muestra del ADN conforme requerido por la Ley número 175 del 24 de julio de 1998, según enmendada.

8. Niega la comisión de los delitos imputados según evaluación realizada.

En esencia, la Junta concluyó que el recurrente no cuenta con vivienda donde residir. Enfatizó que se requiere una evaluación psicológica actualizada, además observar sus ajustes por un período adicional en custodia mínima. Por último, destacó que el señor Crespo volverá a ser considerado para el privilegio de Libertad Bajo Palabra en junio del año 2025.

En desacuerdo, el recurrente presentó una *Moción de Reconsideración.* En síntesis, arguyó que las únicas determinaciones de hechos que no le favorecen no están basadas en el expediente. Además, sostuvo que cumple con todos los requisitos a ser considerados por la Junta para ser beneficiado del privilegio de extinguir la sentencia fuera de la institución carcelaria.[3]

Examinada la *Solicitud de Reconsideración* del recurrente, la Junta la declaró *No Ha Lugar.*

Inconforme aún, el señor Crespo compareció ante este foro mediante *Revisión Judicial,* y alega la comisión del siguiente señalamiento de error:

ERRÓ LA JUNTA DE LIBERTAD BAJO PALABRA AL DENEGAR LA SOLICITUD DEL PETICIONARIO-RECURRENTE DE CONCEDER LA LIBERTAD BAJO PALABRA, ACTUANDO DE MANERA ARBITRARIA Y CAPRICHOSA, EN VIOLACIÓN AL DERECHO DE REHABILITACIÓN DEL CONFINADO Y EL DEBIDO PROCESO DE LEY.

---

[3] Véase, Anejo II, págs. 6-10.

Examinada la petición de *Revisión Judicial,* este Tribunal emitió una *Resolución* el 10 de octubre de 2024, concediéndole un término de veinte (20) días a la Junta para que expresara su posición al recurso. Por su parte, el 31 de octubre de 2024 la Junta representada por la Oficina del Procurador General del Puerto Rico compareció ante nos mediante un *Escrito en Cumplimiento de Resolución.* En el mismo, la Junta indicó que a la luz del *Informe de Libertad Bajo Palabra* el hogar propuesto por el recurrente era uno viable. En cuanto a la evaluación psicológica, la parte recurrida aclaró que dicha evaluación no es necesaria ya que el señor Crespo contiene en su expediente una evaluación psicológica vigente. En otras palabras, la Oficina del Procurador General de Puerto Rico aceptó que la determinación de denegar el privilegio de Libertad Bajo Palabra no estuvo sustentada en el expediente. Por tanto, la Junta razonó que el presente caso debe ser devuelto para una nueva evaluación tomando en cuenta lo expuesto anteriormente.

Con el beneficio de la comparecencia de todas las partes, pasamos a resolver.

**II.**

**A. Revisión Judicial**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección,* 174 DPR 247 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson y otros v. Consejo de Titulares y otros*, 2024 TSPR 64, 213 __ (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer, v. ARPe,* 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Voilí Voilá Corp. et al v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Voilí Voilá Corp. et al v. Mun. Guaynabo, supra*; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección, *OCS v. CODEPOLA,* 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que

examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Voilí Voilá Corp. et al v. Mun. Guaynabo, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otros,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016). Lo anterior responde a la vasta experiencia y conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *González Segarra et al. v. CFSE,* 188 DPR 252 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación,

aunque esta no tiene que ser la única o la más razonable. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230 (2017). Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias v. Caribe Specialty et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía, supra,* pág. 36, las determinaciones de derecho pueden ser revisadas en su totalidad. *Torres Rivera v. Policía* de PR, *supra,* pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v. Yiyi Motors,* 161 DPR 69 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177 (2009). "En esas circunstancias, [el foro apelativo] cederá la deferencia que merecen las agencias en las aplicaciones e

interpretaciones de las leyes y los reglamentos que administra". *Super Asphalt v. AFI y otro, supra.* Véase, además, *Voilí Voilá Corp. et al v. Mun. Guaynabo, supra; Rolón Martínez v. Supte. Policía, supra.*

### B. Junta de Libertad Bajo Palabra

La Ley Núm. 118 de 22 de julio de 1974 (4 LPRA sec. 1501 *et seq.*), según enmendada, conocida como la Ley de la Junta de Libertad Bajo Palabra (Ley Núm. 118-1974), creó la Junta adscrita al Departamento de Corrección y Rehabilitación. Como parte de sus deberes y autoridades, la Junta podrá decretar la libertad bajo palabra de cualquier persona que este recluida en cualquier institución penal del país, sujeto a que cumpla con el término mínimo dispuesto por ley y que no se trate de los delitos excluidos de dichos beneficios. *Benítez Nieves v. ELA*, 202 DPR 818 (2019).

Así pues, el propósito fundamental que persigue la Ley Núm. 118-1974 es permitir que una persona que haya sido convicta y sentenciada a un término de reclusión pueda cumplir la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que la Junta le imponga para concederle la libertad. *Maldonado Elías v. González Rivera*, 118 DPR 260 (1987). Dicho propósito está en armonía con el mandato constitucional establecido en el Artículo VI, Sección 19, que establece, en lo pertinente, que "será política pública del Estado Libre Asociado [...] reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. ELA, LPRA, Tomo 1.

Cónsono con lo anterior, la Junta adoptó el Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9232 de 18 de

noviembre de 2020 (Reglamento Núm. 9232).[4] En lo pertinente al caso ante nuestra consideración, el Artículo X, Sección 10.1 (B) (7) del referido Reglamento establece que:

> 7. Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.
>
> a. El plan de salida podrá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.
>
> b. Cuando el plan de salida propuesto sea fuera de la jurisdicción de Puerto Rico: [...]
>
> **e. Residencia**
>
> i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o un programa interno.
>
> ii. De proponer una residencia, el peticionario proveerá el nombre completo y número de teléfono de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.
>
> iii. De proponer una residencia propia y no contar con recurso familiar, deberá presentar como recurso y apoyo el amigo consejero o alguna persona que le pueda servir de apoyo, aunque no resida con el peticionario.

---

[4] El Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9603 de 25 de septiembre de 2024 anula el Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9232 de 18 de noviembre de 2020. Sin embargo, en el caso ante nos utilizaremos el Reglamento Núm. 9232 por ser el vigente al momento de los hechos.

Deberá presentar el nombre completo de esa persona, número de teléfono y correo electrónico. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone recibir el peticionario de serle concedida la libertad bajo palabra.

iv. Si el peticionario interesa ingresar a un programa interno, tendrá que presentar la carta de aceptación del programa, así como proponer una residencia alterna en la cual disfrutará de los pases, en los casos que aplique. Dicha residencia alterna será corroborada para determinar su viabilidad. Si la residencia alterna no resulta viable, el peticionario no podrá disfrutar de pases hasta tanto no provea una residencia alterna viable, y así lo autorice la Junta.

**v. Para determinar si la vivienda propuesta es viable, la Junta considerará:**

(a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y cómo el peticionario se relaciona con estos.

(b) Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.

(c) Condición de la planta física de la residencia y cantidad de habitantes de la misma.

(d) Si la residencia propuesta está relativamente cercana a la residencia de la víctima de delito.

(e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta, excepto se encuentre incluido en el contrato de vivienda o certificación de la administración correspondiente.

(f) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.

**f. Amigo consejero**

i. El amigo consejero tiene la función de cooperar con la Junta y el Programa de Comunidad en la rehabilitación del peticionario.

[...] (Énfasis suplido).

Cabe destacar que "la Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad". Sec. 10.1 (B)(12) del Reglamento 9232.

**III.**

En su señalamiento de error, el señor Crespo aduce que erró la Junta al denegar su solicitud de Libertad Bajo Palabra de manera arbitraria y caprichosa, en detrimento a su derecho de rehabilitación y al Debido Proceso de Ley.

De conformidad con los hechos reseñados, el 18 de junio de 2024, la Junta emitió una *Resolución* mediante la cual determinó que el señor Crespo no cualifica para beneficiarse del privilegio de libertad bajo palabra. Sostuvo que el recurrente no cuenta con un plan de salida viable y una evaluación psicológica actualizada. Sin embargo, el Informe Breve de Libertad Bajo Palabra concluyó que el hogar propuesto por el señor Crespo es uno viable. A su vez, en su comparecencia ante este Tribunal, la Junta, representada por la Oficina del Procurador General de Puerto Rico, admitió que contrario a lo resuelto en la *Resolución* recurrida, no es necesaria una nueva evaluación psicológica pues la que obra en el expediente está vigente.

Como señalamos anteriormente, los tribunales deben sostener las determinaciones de hechos de las agencias si están

basadas en evidencia sustancial que obra en el expediente administrativo. Así pues, los tribunales revisores descartarán el criterio de los entes administrativos cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo.

En el presente caso, entre las determinaciones de hechos de la *Resolución* recurrida, la Junta concluyó, sin base en el expediente, que el recurrente no cuenta con un plan de salida en una vivienda viable. Concluyó, además, que, para conceder el privilegio de Libertad Bajo Palabra, era necesaria una evaluación psicológica actualizada. No obstante, en su comparecencia la Junta indicó que según el *Informe de Libertad Bajo Palabra* el hogar propuesto por el recurrente era uno viable. Además, señaló que el señor Crespo contiene en su expediente una evaluación psicológica vigente. En síntesis, la propia Junta aceptó que las determinaciones de hechos no estaban basadas en evidencia sustancial que obra en el expediente administrativo. En consecuencia, sostuvo que el caso debe ser devuelto a la Junta para que, a la luz de los mismos hechos aceptados por ésta, el recurrente sea evaluado nuevamente. Concluimos, por lo tanto, que erró la Junta al sostener su denegatoria en hechos que no están sustentados en el expediente administrativo.

**IV.**

Por los fundamentos expuestos, se revoca la *Resolución* recurrida y se devuelve el caso a la Junta para que evalúe nuevamente el caso, en un término no mayor de 30 días, de conformidad a lo aquí dispuesto, tomando en consideración los hechos aceptados por la propia Junta en su comparecencia ante este Tribunal.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del

Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones